[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED AUGUST 13, 1997
The defendant, Paul Ferro. Jr., was charged in the information with Failure To Obey A Stop Sign, in violation of Section 14-301 of the Connecticut General Statutes, and with Operating Under Suspension, in violation of Section 14-215.
Prior to commencing a trial to the Court on August 5, 1997, the State filed a second information, charging the defendant with a violation of Section 14-215 (c). That section reads:
 (c) Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a, subsection (d) or (f) of subsection 14-227b, or section 53a-56b or 53a-60d, shall be fined not less than five hundred dollars nor more than one thousand dollars, and be imprisoned not more than one year, thirty days of which may not be suspended or reduced in any manner.
The second part of the information must be proven, before the enhanced penalty, provided by Section 14-215(c) can be imposed.State v. LeSelva, 163 Conn. 229, 233-34 (1972); State v. Torma,21 Conn. App. 496, 505-06 (1990).
Evidence introduced at trial revealed that during the morning of February 14, 1996, one Paul Visconti was operating a Chevrolet pickup truck northbound on Route 139 in North Branford, near 229 Branford Road West, the location of a condominium complex in CT Page 3169 which the defendant Paul Ferro, Jr. resided.
Route 139 is a public highway, running generally in a north to south direction, with one lane of travel in each direction.
The entrance to the condominium complex is adjacent to the northbound lane of travel.
Weather conditions, according to the testimony of all witnesses, consisted of snow mixed with ice and rain, creating slick and slippery road conditions.
Snow and ice obscured the road pavement.
Testimony was received from Paul Visconti, his stepfather Philip Gibbs (a passenger in the Visconti vehicle), Officer Mark Flanagan of the North Branford police department, and the defendant, Paul Ferro, Jr.
Paul Visconti and Philip Gibbs testified that the defendant's vehicle, a white Lincoln, entered the northbound lane of Route 139 in front of the Visconti vehicle, from the condominium complex.
As the white Lincoln was moving in front of his vehicle, Mr. Visconti testified that he avoided contact by steering his vehicle to the left.
The vehicle spun out of control into the southbound lane, where it was struck by another vehicle, operated by one Mary Burdick. The Burdick vehicle struck the pickup truck in the rear.
Both Mr. Visconti and Mr. Gibbs testified that the white Lincoln drove north on Route 139, and returned to the condominium a short time later.
The defendant testified that he was driving the white Lincoln, but that he never entered the travel portion of Route 139. Instead, he claimed that he was at all times in the condominium complex, on private property, and did not drive on the highway.
After obtaining a description of the Lincoln from Mr. Visconti and Mr. Gibbs, Officer Flanagan located the vehicle. He spoke to the defendant, who acknowledged operating the vehicle. CT Page 3170
Concerning the second part of the information, the state introduced the following documents, pursuant to and in compliance with Section 14-3 of the Connecticut General Statutes.[1]
 1) A suspension notice mailed to the defendant, Paul A. Ferro, Jr. (Exhibit C).
2) Certified Bulk Mailing List (Exhibit D).
 3) Driving history of the defendant Paul A. Ferro. Jr., including suspension of license effective December 12, 1995 based upon a violation of section 14-227b of the Connecticut General Statutes which suspension expired on June 12, 1996 (Exhibit E).
Regarding the charge of Failure To Obey a Stop Sign, at the close of the case, the state entered a nolle to the charge. The defendant's motion to dismiss was granted.
FINDINGS
Based upon testimony at trial, the court makes the following findings:
1. It is found that on February 14, 1997 at approximately 9 a.m. one Paul Visconti was operating a Chevrolet pickup truck northbound on Route 139, North Branford, near 229 Branford Road West, the site of a condominium development.
2. It is found that his stepfather Philip Gibbs, was seated in the front passenger seat of the vehicle.
3. It is found that road conditions were slippery. and a mixture of snow and ice covered the travel portion of the highway.
4. It is found that Route 139 is a public highway, running in a generally north-south direction, with one lane of travel in each direction.
5. It is found that at approximately 9 a.m., the defendant Paul Ferro. Jr. was operating a white, 1990 four door Lincoln, at the intersection of Route 139, and the entrance to the CT Page 3171 condominium complex.
6. It is found that the vehicle being operated be the defendant Paul Ferro, Jr. entered the travel portion of Route 139, in front of the vehicle being operated by Paul Visconti.
7. It is found that Paul Visconti swerved his vehicle toward the center of the highway to avoid striking the defendant's vehicle, and in doing so lost control of his vehicle, entered the southbound lane, and was struck in the rear by a vehicle operated by one Mary Burdick.
8. It is found that the defendant operated his vehicle northbound on Route 139, and returned to the condominium complex a short time later.
9. It is found that on February 14, 1997, the defendant Paul Ferro, Jr.'s right to operate a motor vehicle in the State of Connecticut was under suspension.
10. It is found that notice of that suspension was sent to the defendant on November 16, 1995 by the Connecticut Department of Motor Vehicles.
11. It is found, that the defendant's license to operate a motor vehicle was suspended, effective December 12, 1995 and that he was eligible to apply for a restoration of his operation privileges on June 12, 1996.
12. It is found that the reason the defendant's right to operate a motor vehicle was under suspension was his refusal to take a chemical alcohol test, in violation of Section 14-227b of the Connecticut General Statutes.
13. It is found that the defendant operated a motor vehicle on a public highway, while his license was under suspension by the Department of Motor Vehicles.
14. It is found that the enhanced penalties contained Section 14-215 (c), apply in this case, the state having proven that the defendant violated Section 14-215 (c).
DEFENDANT'S MOTION TO DISMISS
In his motion to dismiss dated May 29, 1996, and in his CT Page 3172 testimony at trial, the defendant maintained that he was operating his motor vehicle on private property, and, therefore, the state had failed to prove an essential element of Section 14-215; that of operating on a public highway.
The defendant sought dismissal of the charges, pursuant toState v. Haight, 2 Conn. Cir. 79 (1963).
While the defendant's motion to dismiss must be denied based upon the facts as found, this court agrees with the defendant that operation on a public highway is an essential element of operating under suspension, in violation of Section 12-215(c.)
Although not called upon to decide the specific issue raised in Haight, the Appellate Court has endorsed the defendant's position, holding that there are three elements to the crime of operating under suspension:
1) that the defendant operated a motor vehicle;
 2) that the vehicle was operated on a public highway; and
 3) that it was operated during a period when the operator's license was suspended by the commissioner of motor vehicles. State v. Torma, supra,
at 500-01 (see also State v. Melechinsky, 38 Conn. Sup. 384 (1982) (Spada, J.).
The state argues persuasively that Section 14-215(c) deals with one who operates" a motor vehicle, and that the phrase "on a public highway" appears nowhere in the statute.
Furthermore, Section 14-227a(a) of the Connecticut General Statutes prohibits the operation of a motor vehicle while under the influence of liquor, drugs or both on surfaces other than public highways. The statute provides:
 . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any other drug or both if he operates a motor vehicle on a public highway of this state or any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or CT Page 3173 any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one percent or more of alcohol, by weight.
The state argues that if the Haight rationale is accepted, the license of an operator might be suspended for operating while under the influence on a private road or in a parking lot, yet that driver could lawfully operate a motor vehicle on that same private road or in that same parking lot while his license was suspended, and not violate the provisions of Section 14-215(c).
This court is acutely sensitive to the principle that a court should construe a statute as it finds the language, without reference to whether it thinks the statute would have been or could have been improved by the inclusions of other provisions.Johnson v. Manson, 196 Conn. 309, 315 (1985); Battersby v.Battersby, 218 Conn. 467, 470-71 (1991). The task of writing statutes has been properly committed to another branch of government.
If this were a case of first impression, this court would have no difficulty in refusing to do by implication and by inference, that which the General Assembly has refused to do explicitly.
However, given the judicial gloss placed upon Section 14-215(c) by the Appellate Court in Torma, any reconsideration of the essential elements of operating while under suspension must come from that court, or from the General Assembly through legislative clarification.
A finding of GUILTY may enter, on the charge of operating under suspension, in violation of Section 14-215(c).
RADCLIFFE, J.